IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

BETTY TORRES

    Plaintiff,

v.

DOCTORS CENTER HOSPITAL MANATI

    Defendant.

**Civil No. 11-1479 (SEC)**

**OPINION AND ORDER**

Uncertain whether this diversity action satisfied the statutory jurisdictional amount, see 28 U.S.C. § 1332(a), this court ordered the parties to file simultaneous briefs addressing such concern. Minutes of March 29, 2012 Case Management and Settlement Conference, Torres v. Doctors Center Hospital Manati, at Docket # 33 (D.P.R. Mar. 29, 2012). The parties complied, and filed the motions now pending (Dockets # 34 & 36).[1] After carefully reviewing the filings and the applicable law, the Court concludes that the matter in controversy falls short of exceeding the jurisdictional amount requirement.

**Factual and Procedural Background**

A succinct introduction to the facts of this case suffices to set the stage for the analysis. Plaintiff Betty Torres, a New York resident, filed this action (Docket # 1) against defendant Doctors Center Hospital Manati (the "Hospital"), invoking this court's diversity jurisdiction. See 28 U.S.C. § 1332(a). She advances one lone claim, purportedly under Puerto Rico's general tort statute, P.R. Laws Ann. tit 31, § 5141, and seeks $250,000 in damages for an alleged medical malpractice suffered by her elderly mother, Juana Vazquez. Although Torres—along with her mother and two sisters—first filed suit in the Commonwealth courts, she voluntary

---

[1] Plaintiff filed her motion on April 19, 2012, a day past the deadline (Docket # 33).

**Civil No. 11-1479 (SEC)**                                                                 Page 2

dismissed her individual complaint in order to commence this parallel federal action and ultimately obtain a jury trial.

The underlying facts are largely uncomplicated. While watching children play, Vazquez's right eye was hit by a ball. As a result, she was taken to the Hospital's Emergency Room, where the Hospital's nurses drew blood samples. Unfortunately, Vazquez's forearm "turned black," and, according to the complaint, developed a hematoma. Vazquez, who is now ninety-two, was hospitalized for thirty-eight days due to the hematoma. Today, Vazquez's right arm continues to hurt, and "studies" show that she suffers from nerve damage.

Vazquez is not a party to this federal case; her daughter, Torres, is the sole plaintiff. As particularly relevant here, Torres left Puerto Rico—and thus her mother's home—in the 1970's. And she has since lived away from Vazquez except for when she visits Puerto Rico during her summer vacations. Docket # 39-1, pp. 20 & 23.

As to Torres' damages, the complaint states:

> [Plaintiff] has suffered, suffers and will forever suffer deep and severe mental and emotional anguish and loss of enjoyment of life for the pain and limitations caused to her mother. Plaintiff couldn't come to Puerto Rico at the time of the incident, for which reason she felt she couldn't help her mother with her necessities and the pain caused to her. After her mother's discharge from the [H]ospital . . . plaintiff also suffered because she couldn't help her with the disability she now has. She also suffers because her mother has lost her way of life. [Vazquez] can't work anymore and she needs assistance to take care of herself. . . .

Docket # 1, ¶ 20.

**Standard of Review**

FED. R. CIV. P. 12(b)(1) is the proper vehicle for challenging a court's subject matter jurisdiction. Valentín v. Hospital Bella Vista, 254 F.3d 358, 362-63 (1st Cir. 2001). Under this rule, a wide variety of challenges to the Court's subject matter jurisdiction may be asserted. Id. (citations omitted). As relevant here, Rule 12(b)(1) is the appropriate vessel for analyzing 28 U.S.C. § 1332(a)'s amount-in-controversy requirement. Soprema, Inc. v. Workers Corp., 485

**Civil No. 11-1479 (SEC)** Page 3

F.Supp. 2d 1, 3 (D.P.R. 2007). When faced with a jurisdictional challenge, courts must "[g]ive weight to the well-pleaded factual averments in the operative pleadings . . . and indulge every reasonable inference in the pleader's favor." Aguilar v. U.S. Immigration and Customs Enforcement Div. of Dept. of Homeland Sec., 510 F.3d 1, 8 (1st Cir. 2007).

A plaintiff faced with a motion to dismiss for lack of subject matter jurisdiction has the burden to demonstrate that such jurisdiction exists. E.g., Lord v. Casco Bay Weekly, Inc., 789 F. Supp. 32, 33 (D. Me.) (citations omitted), reh'g denied, 789 F. Supp. 32, 36 (D. Me. 1992); see also Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 551 (1st Cir. 2005) ("The burden of establishing jurisdiction rests with the party who asserts its existence.") (citation omitted). In this context, this court is empowered to resolve factual disputes by making reference to evidence in the record beyond the plaintiff's allegations without having to convert the motion to dismiss into one for summary judgment. See Hernández-Santiago v. Ecolab, Inc., 397 F. 3d 30, 33 (1st Cir. 2005) (per curiam).

**Applicable Law and Analysis**

*Amount-in-Controversy Requirement*

The Hospital contends that Torres falls short of meeting the $75,000 jurisdictional amount, thus depriving this court of subject-matter jurisdiction. In opposition, Torres maintains that such amount is "[m]et and/or no legal certainty exists that plaintiff's claim does not meet the jurisdictional amount." Docket # 7, p. 36-1. For the reasons laid out below, the Hospital has the winning argument.

When determining whether a party meets the amount-in-controversy minimum, federal courts must apply the long-standing test established by the Supreme Court in St. Paul Mercury Indemnity Co. v. Red Cab Co. The Court described the so-called legal certainty as follows:

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It

**Civil No. 11-1479 (SEC)** Page 4

> must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal

303 U.S. 283, 288-89 (1938) (footnotes omitted). The First Circuit's decisions have interpreted the aforementioned passage "[t]o mean that 'legal certainty that the claim is really for less than the jurisdictional amount,' trumps the plaintiff's good faith in claiming for a larger amount." Esquilín-Mendoza v. Don King Prods., 638 F.3d 1, 4 (1st Cir. 2011) (citations omitted). Put another way, the First Circuit has construed the language in St. Paul to mean that "[t]he plaintiff's 'good faith' in pleading the jurisdictional amount includes an element of 'objective good faith.'" Id. (emphasis added). That is, "[g]ood faith is measured objectively"; '[t]he question . . . is whether to anyone familiar with the applicable law this claim could objectively have been viewed as worth' more than the jurisdictional minimum."Abdel-Aleem v. OPK Biotech LLC, 665 F.3d 38, 41 (1st Cir. 2012) (quoting Coventry Sewage Assoc. v. Dworkin Realty Co., 71 F.3d 1, 6 (1st Cir. 1995)) (quoting in turn Jimenez Puig v. Avis Rent-A-Car Sys., 574 F.2d 37, 40 (1st Cir. 1978)).

While this standard "[m]ight at first seem like a high threshold[,]" Abdel-Aleem, 665 F.3d at 41 (citation and internal quotation marks omitted), courts nevertheless have the "[d]uty 'to police the border of federal jurisdiction.'" Id. (quoting Spielman v. Genzyme Corp., 251 F. 3d 1, 4 (1st Cir. 2001)); see also, e.g., American Policyholders Ins. Co. v. Nyacol Products, Inc., 989 F.2d 1256, 1258 (1st Cir.1993) ("A federal court is under an unflagging duty to ensure that it has jurisdiction over the subject matter of the cases it proposes to adjudicate."). Even if the parties "have disclaimed or have not presented" issues that go to a court's subject-matter jurisdiction, courts are still obligated to consider them on their own accord. Gonzalez v. Thaler, 132 S.Ct. 641, 648 (2012) (citing United States v. Cotton, 535 U.S. 625, 630 (2002)).

Generally, plaintiff's allegations "suffice[ ] unless questioned by the opposing party or the court." Stewart v. Tupperware Corp., 356 F.3d 335, 338 (1st Cir. 2004). Once challenged, "the party seeking to invoke jurisdiction has the burden of alleging with sufficient particularity

**Civil No. 11-1479 (SEC)**                                                                                                          Page 5

facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount." Id. This can be done by amending the pleadings or by submitting affidavits. Dep't of Recreation & Sports of P.R. v. World Boxing Ass'n, 942 F.2d 84, 88 (1st Cir. 1991). Although a plaintiff may meet this burden by amending the pleadings, "[j]urisdiction is not conferred by the stroke of a lawyer's pen. When challenged, it must be adequately founded in fact." Diefenthal v. C.A.B., 681 F. 2d 1039, 1052 (1982).

Here, the Court has questioned Torres' assertion of the amount in controversy. Therefore, the burden has shifted to her to show with "'sufficient particularity' facts that in some way support the contention that there is more than $75,000 at stake." Abdel-Aleem 665 F.3d at 42 (citation omitted). Instead of amending her complaint, Torres provided excerpts from her deposition to convince the court that she is "close" with her mother, and thus that her "emotional suffering" is a bona fide one. But, as illustrated below, Torres' problem is not one of factual deficiencies. See id. ("[Plaintiff] provided no substantiation for or valuation of any of the economic, emotional or physical damages . . . ."). Rather, what dooms her claim is her failure to meet the objective good faith standard, under which she must show that "to anyone familiar with the applicable law this claim could objectively have been viewed as worth" more than the jurisdictional minimum. Coventry Sewage, 71 F.3d at 6.

As said, plaintiff's sole claim stems from her "pain and suffering" resulting from the physical injury her mother sustained while at the Hospital. In this context, Rosario Ortega v. Star-Kist Foods, Inc., 370 F.3d 124 (1st Cir. 2004), rev'd on other grounds sub nom, Exxon Mobil Corp. v. Allapattah Servs., 545 U.S. 546 (2005) is particularly instructive as well as factually analogous.

There, a nine-year old girl cut her right pinky finger on a tuna can. Her injuries led to surgery, the prospect of future surgery, minor permanent disability, and scarring. Her parents and sister sued in federal court, claiming "emotional distress damages." Specifically, the mother

**Civil No. 11-1479 (SEC)**                                                                Page 6

claimed that her emotional distress damages totaled $250,000, the same exact amount claimed by Torres here.

As to the young girl, the First Circuit held that she met the statutory jurisdictional amount, because, among other things, the medical prognosis was that the injury could become worse as she grew; and that she may have needed more surgery.[2] But "[t]he other plaintiffs fare[d] differently." Id. at 129. Concluding that the parents and sister could not "[f]ill th[e] entire gap with her emotional distress damages[,]" the First Circuit ruled that they fell short of meeting the jurisdictional minimum. Id. (citation omitted). The court offered several convincing justifications, which control the instant case.

First, it observed that [o]ne of the normal responsibilities of parenthood is dealing with a child's cuts and scrapes, and . . . the injuries were relatively minor." Id. Here, the complaint's allegations show that the injuries sustained by plaintiff's mother were likewise "relatively minor." Although Vazquez underwent two "drainages" to evacuate the hematoma on her right forearm, no evidence has been presented that she suffers from severe disability or an otherwise life-threatening injury. In fact, Torres admitted that the doctors (contrary to Rosario-Ortega) never said that her mother had to be operated again. Nor did they state that Vazquez had contracted an infection. Docket # 39-1, p. 49. While the Court sympathizes with Vazquez's pain, nerve damage in her arm, and "numbness in her hand," such harms do not strike the Court as life-threatening injuries.

Moreover, in Puerto Rico, the nearest descendants (Torres) are obliged to "support" their ascendants (Vazquez). P.R. Laws Ann. tit 31, § 562. Support, of course, [i]s understood to be all that is indispensable for maintenance, housing, clothing and medical attention . . . ." Id. at § 561. Viewed through the prism of the controlling legal standard, Torres' contention that she has had to "sacrifice part of her ordinary life to take care of her [ninety-two year old] mother"

---

[2] Obviously, as to Vazquez, the Court cannot say to a legal certainty that she could not recover a jury award larger than $75,000. But Vazquez is not a party to this case.

**Civil No. 11-1479 (SEC)** Page 7

is unpersuasive.[3] Human experience suggest that Torres (or any responsible, caring daughter) eventually would have had to "sacrife" her life for her ninety-two year old mother. As the Hospital correctly points out, Torres' claim that she now has to take care of her mother is precisely her duty as a daughter: to care for her aging mother.

Second, the court in Rosario-Ortega placed weight on the fact that "[n]either [the injured girl] nor her mother sought any counseling relating to the injury." 370 F.3d at 129-130. In the case at hand, Torres admitted that she sought no counseling relating to her mother's injury or her alleged emotional damages. Docket # 39-1, p. 25. Third, Torres—like the sister in Rosario-Ortega—"[d]id not miss any work or school obligations" to take her mother to some of the physical therapy sessions. Rosario-Ortega, 370 F.3d at 131. Torres, who works as a school teacher in New York, waited until her summer vacations to visit her mother at the Hospital. And, for nearly four decades, Torres has continued to live in New York. Cf. id. (discrediting father's emotional distress claim because he did not live with injured daughter).

---

[3] Asked why she is suing, Torres alluded to her responsibilities as a daughter:

> Well, if we look at it, one...I would say there are things that happen sometimes that affect one and seeing my mother and having to travel from New York to here. Right now one of the reasons, I had to travel to be with my mother, I spent several days in the hospital with her, I spent several days with her. Normally, I see my mother suffering so much. A person who was very active, now she's a person who can hardly do anything. I tried to help her as much as I can.
>
> Normally...right now my mother is going to have to be travelling[sic], I have to be with my mother taking care of her, a person who was independent, who has lived her entire life on her own and has been able to do everything for herself. Now my mother needs someone to take care of her almost all the time. And if it's not Carmen or if my other sister isn't there, well I also have to look out. . . . Right now my job is so, so difficult and on top of work I also have to deal with worrying that my mother needs help and I have to . . .

Docket # 39-1, p. 57-58 (emphasis added).

**Civil No. 11-1479 (SEC)**                                                                                                          Page 8

Finally, the mother in Rosario-Ortega "[d]id not personally witness [her daughter's] accident or the immediate aftermath." Id. at 131. Here, Torres neither experienced her mother's accident nor arrived at the Hospital to experience the "immediate aftermath."[4] Her mother was admitted to the Hospital on May 26, 2009, but Torres arrived over a month later. Docket # 39-1, p. 34. The record shows, moreover, that Torres only spent a couple of nights taking care of her mother at the Hospital, from June 30 to July 3, when her mother was discharged. Id., pp, 35-37. Thereafter, she stayed with her mother for approximately two weeks before returning to New York. Id., p. 38.

Given Rosario-Ortega, Torres has not met her burden of showing with sufficient particularity that it is not a legal certainty that her claim involves less than the jurisdictional amount. This does not mean, of course, that Torres suffered no damages. It simply means that she "[h]as no claim for damages remotely approaching $75,000 . . . ." Esquilín-Mendoza, 638 F.3d at 6; see also Packard v. Provident National Bank, 994 F.2d 1039, 1044-45 (3d Cir.) (28 U.S.C.A. § 1332(a) "[m]ust be narrowly construed so as not to frustrate the congressional purpose behind it: to keep the diversity caseload of the federal courts under some modicum of control."), cert. denied sub nom, Upp v. Mellon Bank, N.A., 510 U.S. 964 (1993).

Torres concedes she found it "difficult to find cases similar in facts." Docket # 36-1, p. 6. Nevertheless, and in an apparent attempt to blunt the striking similarities with Rosario-Ortega, she cites a 1992 local case (presumably filed in the Court of First Instance of Puerto Rico, as the decision was unavailable electronically), where, according to her, a man lost the use

---

[4]Torres testified as much:

> [A]ccording to what my sister Lydia told me, because I wasn't there, . . . my mother started feeling a pain and a swelling in her arm. This was, more or less, on the second day that my mom was in the hospital. And from that point a pain and a swelling started in my mom's arm and she couldn't move her fingers and the arm started swelling up really big.

Id., p. 39 (emphasis added).

**Civil No. 11-1479 (SEC)**                                                                 Page 9

of his arm while undergoing treatment in a hospital. See Docket # 36-1, p. 6. There, the court allegedly awarded $25,000 for the mental suffering of the man's wife. Plaintiff then cites Herrera-Bolivar v. Ramirez-Torres, 2010 T.S.P.R. 192 (2010) for the proposition that previous damages "[a]wards have to be updated to the present value at the time in which the court awards those damages." Docket # 36-1, p. 7. Next, according to her own calculations, she says that the 1992 damages award to the wife yields a present value of "$86,062.50." Id.

There are several problems with plaintiff's creative valuation "calculations," however. At the outset, she provided neither an electronic citation nor a courtesy copy of the 1992 state court case. Even taking plaintiff's calculations at face value, she likewise provided the Court with no official or certified English translations of the Herrera-Bolivar case; such omission usually precludes the Court's consideration of that case. See, e.g., Feliciano-Hernandez v. Pereira-Castillo, 663 F.3d 527, 539 n. 6 (1st Cir. 2011) (reiterating that the local rules of this District and federal law mandate federal litigation to be conducted in English) (citing D.P.R. Civ. R. 5(g); 48 U.S.C. § 864; Estades-Negroni v. Assocs. Corp. of N. Am., 359 F.3d 1, 2 (1st Cir. 2004) (per curiam)).

More fundamentally, plaintiff's invitation would lead this court into error. See Stewart, 356 F.3d at 339 (finding that "[r]elying on the amount of damages awarded by Commonwealth courts constitute[s] error"). "Using Puerto Rico Supreme Court cases to analyze the amount-in-controversy for diversity purposes is the equivalent of comparing apples and oranges." Id. Such divergence stems from the fact that in Puerto Rico, judges and not juries allocate damages, for "[t]he Constitution of Puerto Rico does not allow for juries in civil cases." Vera-Lozano v. International Broadcasting, 50 F.3d 67, 71 (1st Cir. 1995) (collecting cases). Above all, Torres neglected to cite any federal cases in support of her exaggerated damages claim, see Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 352 (1961) (finding that determination of amount in controversy is to be decided under federal standards), and the Court declines to go on a wild-goose chase on this front.

**Civil No. 11-1479 (SEC)**                                                              Page 10

To be sure, "federal courts must . . . look to state law to determine the nature and extent of the right to be enforced in a diversity case . . . ." Stewart, 356 F.3d at 339  (quoting Horton, 367 U.S. at 352-53). Looking at Puerto Rico's tort law to determine the nature and extent of the right to be enforced here, further convinces this court that Torres' claim to emotional distress damages over $75,000 is too tenuous. See, e.g., Perez Cruz v. Hosp. La Concepcion, 15 P.R. Offic. Trans. 952, 115 P.R. Dec. 721, 738-39 (1984) ("Though an examination of their testimonies reveals a deep scar in their lives, they do not cast any special emotional peculiarities that justify the sums awarded. With the readjustments entailed by such an event, they have been able to go on living in apparent normality.") (emphasis added). In short, no such "special emotional peculiarities" are present in this case.

**Conclusion**

Indulging all inferences in Torres' favor, one "familiar with the applicable law . . . could [not] objectively have . . . viewed [her claim] as worth [$75,000]." Coventry, 71 F.3d at 6. Plaintiff's claim should have remained in state court, where it rightfully belongs; if she wishes, she may refile in the appropriate state court. Because Torres has failed to meet her burden of showing that it is not a legal certainty that her claim involves less than $75,000, the Court **DISMISSES** this case for want of jurisdiction.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of May, 2012.

*S/Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge